2009-1196 Tillotson Corporation v. ITC Mr. Belanger, am I pronouncing your name correctly? Belanger, Your Honor. Belanger. May it please the Court, William Belanger for Appellant Tillotson Corporation. This case and this appeal turns on the question of whether the patent applicants broaden their claims impermissibly on reissue by substituting the word initial for the word predetermined. And, Your Honors, the principal error here at the Commission level and the Commission opinion was in looking only at those two words in isolation as opposed to applying proper analysis of looking at the claim scope as a whole to determine whether a hypothetical product, in this case a glove, would have fallen within the scope of the reissued claims but not fallen within the scope of the original claims. Do you think that the term predetermined and the term initial mean the same thing? No, Your Honor. Okay. In the abstract they do not mean the same thing. In the context of the patent, the intrinsic record, and the claim as a whole, they refer to the same value, which is the starting value of a test used to determine the relaxation property of the claimed glove. Well, the statement that was made to the PTO says, among other things, that the rubber exerts an initial rather than predetermined pressure on the hand, which suggests a difference between the two, even in the context of the patent. Your Honor, the other portion that I believe is also pertinent in the reissue is the statement by the applicants pointing specifically to the column in the patent that talks to the 100 percent modulus test. Well, let me first have you respond to this statement, which sounds like the patentees saying they're not the same, even in the context of the patent. Is that not right? The two words are not the same, Your Honor, but the value to which they refer is the same starting value. Well, it's that the pressure is initial rather than predetermined, which sounds like they're saying the value of the pressure is different in the one case from the other, doesn't it? And I respectfully disagree, Your Honor. How would you read those words, other than the way I'm proposing to read them? The way I would propose to read them, Your Honor, is in context. The words predetermined and initial both appear in the patent. The word predetermined appears earlier in the patent to describe the claim glove, always in the context of evaluating the elastomeric property of relaxation. And again, the claim is directed to a glove with elastomeric materials with a particular elastomeric property, namely relaxation. Show me in the specification where you believe the patentee has defined the word predetermined contrary to its ordinary meaning, which means known in advance, predetermined. Show me where you think that happens. I don't believe it's used contrary to its ordinary meaning. I believe the context in which it's used is to refer to a pressure or value that's evaluated first before a second reduced value. So the question, I think, turns more on what it's known in advance of as opposed to whether it's being used in a special sense. And what I would point to, Your Honor, is in the specification at column three, running from about lines 46 to 65, there's a discussion of the glove of the invention being a relatively low resilient elastomeric glove. And the applicants describe the elastic properties of that glove as being such that the glove, when placed on a hand, will relax from a predetermined pressure to a reduced pressure, meaning from a first determined pressure to a second determined pressure. Why are you saying predetermined means first pressure, like undefined first pressure? That's how you want us to interpret predetermined to mean an undefined first pressure, whatever that pressure should be. The way I would like the Court to interpret it, Your Honor, is a first defined pressure defined in relation to a second pressure such that a difference can be evaluated. So the predetermined is used to modify the first value, which is then compared to a second value. So you have a first determined value, a second determined value. When you say determined value, the word determined is not doing any work in your formulation, is it? It is, Your Honor, because in the file history and in the patent specification, this discussion of predetermined is then tied to figures one and two. Figures one and two are in turn tied to the 100 percent modulus test, in which there's an initial stress measured, a reduced stress measured, and the comparison is used as a proxy for evaluating the reduction in pressure on the hand. But the word determined suggests that somebody has attached a number to the first. I understand your argument, though, to be that all that's required is that without regard to what the number is that's attached to the first pressure, what's important is the difference between that and the second pressure. That's correct, Your Honor. That is what the use of the term initial takes care of, right? Yes, Your Honor. That's why I'm having trouble with this insertion of the word determined in your formulation. In my formulation, the word determined, and this is consistent in column six of the patent, which describes the test. It has reference to the ASDM D412 standard. And so in the context of this patent and the relevant art, that standard used the word determined to mean measured. And in the context of the 100% modulus test that's described, you have a first measurement of stress or a first determination of stress. You have a second measurement of stress or a second determination. Yes, a first determination, but this one has the initial pressure being predetermined. A determination is different than something that is predetermined. But in this framework, Your Honor, the predetermination, the first determination happens in the 100%. Did you draft these claims originally? I did not, Your Honor. Yeah. And I think that is one of the challenges here is the issue before the court is whether the claims were impervisibly broadened. And on the record, the applicants clearly stated to the patent office in reissue their intention to narrow rather than broaden the claims. Yes, but applicants would state that all the time, right? That's what the rule requires, so the applicant's statement doesn't make it so. But the reason why that's important here, Your Honor, is their statement is attached to the change from predetermined to initial. And in particular, their statement is attached to the Miller reference, which was never measured before the applicants chose to measure it following the European prosecution. Well, I thought with respect to the change from initial, predetermined to initial, that that was described as simply cleaning up language for purposes of clarity rather than being a narrowing. Correct. And the clarity, Your Honor, was to clarify that the meaning was tied to the determination of the relaxation property as opposed to something more generic. And what was distinguished over was a reference that had a particular last-American material. And what the applicants did was they first amended their claims unsuccessfully simply to attach the idea that the glove, when first put on the hand, would be closely fitting. Later on, they changed the percent relaxation such that the relaxation number would be lower than the original. Is the argument that it would be sort of technologically nonsensical to have had the word predetermined in there and give it its ordinary meaning as known in advance? Because with rubber gloves, I mean, how are you going to know in advance exactly how much pressure to exert on any given hand?  If you just viewed the word in isolation, as I believe the commission did, I agree with your formulation. That would not be a coherent formulation because the claim is drawn to a glove, and you have no idea whether it will be put on your hand or my hand, and therefore you can't predetermine a pressure. Thank you. Why couldn't you then just have small, medium, large, and extra large, and predetermined is the number of pressure based on sort of the average hand size of a woman versus a man, small hands, big hands? Because that would not refer to any particular value. Even if it was a glove designed exactly for your hand, the evidence at trial below, which is not contested here, is that the size and shape of your hand would change, and so the absolute value of pressure would change even if it was a glove specifically designed for you. And what the applicants were intending to capture was not a particular pressure value. It was the behavior and characteristics of the elastomeric material. Both the ITC and now intervenors agree that an appropriate way to evaluate that, their expert admitted at trial, it was not possible to directly measure pressure on the hand. So therefore, the evaluation is done through a proxy, this destructive test. And when you, in the context of the patent and the claim as a whole, you have to do a destructive test, basically cut strips out of a glove and you have to take a first measurement of an initial stress, and that's a proxy for a predetermined pressure as described in the patent, and then you need to allow that stress to decay over time, and then you measure that reduction. And that's how you evaluate whether a glove falls within the scope of the claim, original or reissued claim, or not. Do you think, suppose that the patent language, instead of being what it was in the claims, predetermined pressure on the hand, had said initially exerting an initial predetermined pressure or a predetermined initial pressure, and the change that was made was simply to take out the word predetermined without substituting anything for it. Do you think that that would be a permissible change in this situation? Your Honor, I do believe there are different phraseologies, and I don't know that I thought about that exact phraseology. I do believe that there's a difference between the substitution of words, which occurred here, and the complete removal of the word. But your suggestion is that predetermined in this context is the same as initial, and therefore all you would have would be initially, in effect, initially exerting an initial initial pressure, and presumably you'd have to say that you haven't expanded the scope of the patent, wouldn't you? Yes, Your Honor. If you attach the same definition in your phraseology to predetermined... Well, but you do, right? Yes, if you had the word predetermined initial instead of simply predetermined, which in phrasing the claim, you have two pressures. You've got a predetermined pressure. You have a reduced pressure. Of course, of course. But we're talking about the first of those two. Correct. All right. Now, here's my concern. What you have here is what looks to be potentially an additional limitation, but it's a limitation that we've all had a hard time coming to terms with, and I think the Commission did too, of exactly what does this predetermined import into the claim. Now, is it permissible as a reissue action to get rid of a murky claim term that may or may not have some greater significance in favor of a term that is clearly at the narrow end of whatever ambiguity there is in the previous language? Yes, Your Honor. I believe that is permissible, and I think that's this Court's framing of the issue in the HHI case, where in that case there was no dispute that language was removed from the claim. There was a limitation of a support band being attached to the midsole. That limitation was removed completely from the claim. But the issue in that case, and we believe the analogous here, is that other elements of the claim imported that same stricture, and so therefore there was not a hypothetical shoe in that case that would have infringed the reissued claim that would not have infringed the original claim. Well, I guess my question is really, you know, to try to assess its scope, we can't say for sure that we would conclude that that term didn't add anything to the term initial. If that's our conclusion, do we rule in your favor or do we uphold the commission? I think in that circumstance you would rule in our favor, Your Honor, because the burden is on the party challenging the validity of the patent, and that burden is by clear and convincing evidence. And so if there's ambiguity, I would argue that would not rise to the level of the requisite clear and convincing evidence to find the patent invalid, particularly when this exact issue was presented to the Patent Office on reissue, and the Patent Office found the change to be an acceptable clarifying change as opposed to broadening change. And I think that same issue, Your Honor, just to briefly address it, the defective declaration, I believe those two issues rise or fall together. In other words, the reissue declaration, the applicants, we believe, expressed an intention to clarify rather than change the scope of the claim. And if this Court is to conclude that there was a mere clarification, there's no dispute that the change from initial, from predetermined to initial, was pointed out to the Patent Office. The only thing that was not explained was that that was a broadening change, which in the commission's phraseology, because we don't believe it was a broadening change, no further explanation was necessary. And we respectfully see that I'm out of time. You respectfully say that this Court's prior decision not giving deference to the Patent Office's interpretation of its rule is the incorrect framing of the law and that that interpretation should be given deference here. Very well. We will reserve some time for rebuttal for you since we questioned you extensively. Thank you. Now, let's see. Mr. Bartkowski, you and Mr. Daniels are splitting time. Is that correct? Indeed. All right. I'll try to give you an indication when you're allotted a period of time. Okay. I see the light. Oh, okay. Okay. Good morning, and may it please the Court. Tilson's talked about the context that this key term was used in. For clarification, you're representing the commission. Oh, indeed you are. Sorry. They've talked about context being important and asserted that the ITC looked at these words in a vacuum. I'd like to take a look at that context, and I think it demonstrates that's not true here. There's two phrases that these terms are used in, predetermined and initial, were used in. In the original patent, it was initially exerting a predetermined pressure on the hand, and they changed it to initially exerting an initial pressure on the hand. So we're talking about a pressure on the hand that in the original claim needed to be both initially exerted and predetermined, versus in the reissued claim, it only needed to be initially exerted. You can say initial, but initial pressure on the hand and the pressure initially exerted on the hand, I just sort of mean the same thing. And looking at that, the key determinative issue in this case is whether there's an additional limitation in the original claim that did not make it through into the reissue. And just taking when you break the two phrases down, you have a pressure that's initially exerted on the hand and predetermined in the original, and you have just a pressure that needs to be initially exerted in the reissue. So in the reissue, you'd say that the double use of initially is redundant. It is indeed redundant, which I'm not saying that's improper. It is a redundancy, and that's what they're trying to say and trying to construe predetermined to be a redundancy as well, which I think is against this court's precedent. And notably, Tilton's asserted here that it only need be determined. Well, if you look at the reissued claim, it doesn't require that it need be determined at all, just that it need to be initial. Now there's an additional step, too, that it needs to be determined before it's exerted on the hand. In other words, predetermined when the glove is done. So there's two steps here that just are not present in the reissued claim, and that renders this claim, the reissued claim, broader. And under this court's test, whether the reissued claim has an additional limitation, it does, that the initial pressure be predetermined, or whether there could be a conceivable product that infringes the reissued claim but does not infringe the original. I'm sorry. Please. What does predetermined mean from a technological standpoint? How would this invention work, this glove, if predetermined were to be given the meaning that you'd like to attach to it, known in advance of a precise number? I think there's a first point that I'd like to make that this isn't the ñ I didn't write this claim. The Commission didn't write this claim. Everybody's backing away from the claim. With good reason. So exactly what it's meant to add technologically to the glove is not the Commission's issue. The Commission's issue is whether the limitation disappeared in the reissued claim. But you have to read any claim language in terms of the context of the patent to appreciate its meaning. So we have to look at predetermined and say, what does it mean in the context of this invention? And if predetermined couldn't possibly mean, in the context of this invention, a number known in advance because that's technologically infeasible, then I think it would be unlikely we would give it that interpretation. Absolutely, Your Honor. And that's exactly what the Commission looked at in construing the limitation. And there was an argument made by Tillotson that the respondents below were arguing that it needed to be a specific pressure selected in advance. And if you look at page 5 to 6 of Tillotson's reply brief, they say that this was improper for the Commission to require a specific selection. But if you look at what the Commission said, they looked at that argument. They understood, how would you do this in practice? And the Commission concluded, and it's in the ID, it's in the Commission opinion, that you didn't need to select a specific numeric pressure. You could use a proxy, such as the 100% modulus test, to determine in advance of the glove being worn what pressure it would exert. What that would add to the glove physically is not much, but it would. Nothing, actually. But it would, notably, Your Honor, it would ensure that the glove manufacturer has made a glove that meets the requirements, not the requirements, but the idea of this invention, which is that it exerted an initial pressure on the hand that's fairly tight, or that's the right amount, so that when it relaxes, it relaxes to a looser pressure, but it's still tight enough to maintain, you know, to stay on the hand, to stay tight on the hand. It's not too loose, and also that it's not too tight. So there is a, there would be a reason to predetermine the pressure that the glove is going to exert, so that you're not constricting surgeons' hands, and so that they're not wearing loose gloves after a few minutes of their operation. But still, if you had two gloves sitting next to one another, one of which had gone through the predetermination stage and the other had not, you wouldn't have any way of knowing that one infringes or the other doesn't, assuming your theory of infringement, correct? Not without litigation discovery, and that gets back to, and to see what they did. There's essentially a process step of determining the pressure that the glove will initially exert on the hand in this product claim, which Tillotson himself has admitted is an acceptable interpretation. So, yes, they would need to conduct discovery to see whether they met this predetermined limitation, and notably, after the claim was reissued, they wouldn't have to, because the limitation doesn't exist in the reissued claim. So suppose that we should conclude, and this would be a different conclusion from the one reached by the commission, but suppose we were to conclude that the word predetermined was stuck in this patent because it sounds learned, and it sounds sort of highfalutin, and it really meant nothing more than initial, but that it did cause the, had created the potential of being interpreted as imposing an additional limitation, so that, this is the same question I asked you opposing counsel, so that the effect of going from predetermined to initial was to eradicate the possibility that the patent would be read more narrowly than the patentee would like. That is to say that predetermined would be given some substance rather than, as we believe, merely treated as fluff. Would that be a sufficient basis for saying that the reissue was invalid? You understand the question? It's a little intricate. I think I do, Your Honor, but I think in order for the hypothetical, in order for them to have any chance to argue that they would win under that hypothetical, you would need to determine, make a kind of subjective determination, this inventor didn't mean what he said. I'm concluding that this inventor liked big words like predetermined, liked to throw the word means in at all points, and the kinds of things that some draftsmen like to put into patents. Predetermined is one of his favorite words, and instead he really meant initial. I suppose, Your Honor, if you conclude that he really meant initial, and if you conclude that that's an acceptable exercise in claim construction, that we're going to take a word that means something, the inventor didn't define it differently. He never said he didn't mean it. He didn't say it was an error to include it, notably, such that like you're talking about now. He didn't say how it arose, and we're just going to save his patent. I suppose they would have a chance, but I think it has to mean something under this court's precedent, and if it does, no matter how generously you read that predetermined to help them prove their case under the original claim, if it means anything, it's an additional limitation, and a conceivable product that doesn't meet that limitation would infringe the later claim and not the original, and that renders their patent invalid. I say that I'm out of time. I want to save some time. We'll hear from Mr. Daniels now. Thank you. Thank you. Mr. Daniels, we'll save your full time. Thank you, Your Honor. Seven minutes, I think you allocated to yourself. That's correct, Your Honor. Scott Daniels on behalf of the interveners in this case, and to address your question about Judge Moore, about the technical meaning and feasibility of the term predetermined, it does have a genuine potential meaning in this technology. When somebody sets out to make a glove, they choose a specific rubber combination, they choose specific processing conditions, an amount of sulfur and sodium that go into the batch so that they can determine ahead of time whether the glove will be comfortable when it's applied to the hand. And when you read through the patent, all the way through, the goal of the patent is to have a glove that's going to be comfortable, one that will go on comfortably and relax so that it won't constrict the surgeon's hand. So a glove maker doesn't go into the laboratory and just make a glove having any pressure at all. Otherwise, he wouldn't be able to sell the gloves. A second point I want to talk about is the defective reissue declaration. Counsel for Tillotson says that you can decide whether this is a broadening reissue and that resolves the whole case, and I don't think that it does. Tillotson essentially makes two excuses for the defective reissue. One is that assuming that the claim is unchanged, that it's just a small change in the claim. But in its interlocutory answers, Tillotson defined this change as a correction of an error. And under Dethmers, any error requires compliance with Rule 175. Dethmers also says, in fact, any difference in the claims requires compliance with Rule 175. And I think the earlier discussion of what the meaning of predetermined is really confirms that in this case, there should have been a statement by the applicant in his declaration of what the error was and how it arose and so on, because it's so difficult to understand what the claim means. Here we have a term, predetermined, which has been considered by a number of objective people already in the case. Now, whether you agree with them or not, I understand, is your decision. But the staff attorney, the ALJ, and the commission all found that predetermined meant decided beforehand. So this is a claim expression that really does require some analysis in order to find out whether it's suitable for the reissue. Well, but suppose that the analysis consisted of, let's say, a further sentence that simply said, upon looking at the use of the term predetermined, we thought it was sufficiently unclear that the right thing to do was to substitute what was intended all along, which is the term initial. Would that, in your view, setting aside whether that was correct, but that's the argument as to whether there really has been a broadening, do you think that would be sufficient explanation of the error? No. Why? 175 would also require an explanation of how the error occurred and how it came to light. Sloppiness on the part of the drafter. Well, then that's the case. Let's say that that's stated. Then that should have been said in the declaration. If it was said, that would be sufficient, you think, to cover the 175? I believe so. Okay. I understand your position. So that said, though, that didn't occur in this declaration, and the examiner never had a chance to determine for himself whether there had been compliance with Rule 175. Also, there's the question of the statement in the declaration about narrowing. And I think the fact that the applicant said, I'm narrowing this claim by reducing the final pressure from at least 80% to at least 50% really begs the question. I think we all appreciate that there could be other ways that the scope of the claim could be expanded. That is, by removing this term predetermined, there was this potential for expanding the scope of the claim to include gloves having a reduced pressure below 50%, but never having been tested by the manufacturer. If I could return to the question of broadening, it seems to me that the position by Tillotson has two really serious flaws. And one is that they fault the commission for considering the words in isolation as opposed to looking at the claim as a whole. And they encapsulize this argument by saying, once this initial pressure is measured and it must be determined whether the relaxation element of the claim is satisfied, that initial pressure becomes a predetermined pressure. It seems to me that that is confusing the claim limitation, which is predetermined pressure, with a test for whether infringement has been satisfied. The test is to conduct the ASTM stretching, as Mr. Bellinger said. But the claim itself doesn't require, as it comes out, any determination by anyone of pressure, just that it have an initial pressure, whereas before it required the predetermined pressure. I think Tillotson's reading also is faulty because it takes the pre out of predetermined. Pre indicates a sense of beforeness, which is completely lost when you have just initial in there. And in terms of the claim drafting, there are so many ways that even supercilious claim drafters could have to write this, that we would all be familiar with. They could have said a first pressure and a reduced pressure. They could have said a first pressure and a second pressure. They could have compared said pressure and a reduced pressure. But they didn't do any of those things. Instead of using those terms that we would all recognize, they threw a word in there, predetermined in their original claim, that for us has some rich meaning. It's a term that's been before this court before and found to be decided in advance. The second flaw, I think, in the argument is that they assert that the commission failed to do any hypothetical claim analysis. And in fact, the commission at three points in its decision did just that. At page A83, 84, again at 84, and A86. Very well. I think we have your argument, unless you have something that you desperately need to say. It sounds like you have something you desperately need to say. Why don't you go ahead. One argument that I hope you will take into account is the best mode. And the reason for that is not because we have a conflict of facts between the two parties, but I think that Judge Exick's misapplied the law of what it is to have a preferred component or ingredient and to use what is just available in the laboratory. I take it that if we should uphold the commission on the grounds that it articulated that best mode is an unnecessary issue to get to. Correct. Correct, Your Honor. It's an alternative basis for affirming that. That's what I understood. And indeed, the commission actually rejected your position on that. It did, Your Honor. Okay. Very well. Thank you. Mr. Bellinger, we gave the other side several minutes. Why don't we give you three minutes extra, if you could, Ms. Smith. Thank you, Your Honor. Just a few things to bring to the Court's attention. I think both gentlemen who argued on the other side talked about the reissue declaration and Your Honor's questions about whether there was any explanation. And I'd just like to draw your attention to Appendix 883.127. There was an express linkage and explanation of the term predetermined to the use of the term initial in Column 6. There was extensive argument below, Your Honor, consistent with your argument by Mr. Daniels and his client, that there was insufficient testing, that the testing was not done appropriately, when, in fact, the proof of infringement was all based on the test called out in this Column 6. So what I would submit to the Court, that this is actually an appropriate explanation of a clarifying amendment done to clarify what both the commission and the interveners now agree is the proper meaning of or the predetermined could be evaluated using this test. That's not something that the defendants agreed to below until the commission found it. And so I think this is in line with exactly your point that predetermined was subject to misinterpretation. This was a clarifying amendment to clarify and clearly tie the means for evaluating this last-americ property to the test set out in the patent. The other point, I think it was interesting, the counsel for the ITC referred to a glove being tight enough after it relaxed. And consistent with the HHI case, there were other limitations added to the claim going to that exact issue. The applicants amended the claim to add the requirement that the glove fit closely when first put on. And there was evidence below, which is not contested, that if the glove, the Prior Art Solvex glove, for example, would not fit closely when first put on, even though it had the relaxation properties claimed. They also added a limitation that after relaxation, the glove must still fit closely. Both of those limitations further go to what the first configuration of the glove could be when put on the hand and what the ultimate configuration of the glove would be after the relaxation occurred. So those are additional limitations that were added that go directly to the ITC's point about the overall scope of the claim. I also thought it was interesting, Mr. Daniels, I think, essentially admitted that one could use multiple words to describe the exact same scope of claim. Here the word is predetermined. He gave three other examples that in his view would have resulted in identical claim scope and presumably would not have led to a broadening reissue. And I'd submit to the court that that's exactly what happened here with the change of the word predetermined to initial. That it's permissible to use two different words to refer to the same thing so long as the claim scope is not changed. I also was interested to hear Mr. Daniels essentially acknowledge that if a glove was tested, it would meet the predetermined limitation that was expressly found by the commission. And I would submit to the court it's not physically possible to evaluate relaxation unless at some point there's some tests conducted to evaluate a first pressure in order to have something to compare it to to calculate a difference. And if all that's required in the commission's framing and the intervener's framing of predetermined is that there be a test performed at some point, that's a necessary requirement of the claim as a whole because there needs to be a second value to compare to to calculate a difference. Unless Your Honor have any further questions? Very well. Thank you very much. Thank you. We thank all counsel and the case is submitted.